**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **Paul Olsson (#877266),** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 18 C 6838** |
| v. ) | |
| ) | **Judge Rebecca R. Pallmeyer** |
| **Richard Mails, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

Plaintiff's application for leave to proceed *in forma pauperis* [12] is granted. The trust fund officer at the Elgin Mental Health Center is authorized to deduct $12.20 from Plaintiff's account as the initial partial payment of the filing fee and to continue making deductions in accordance with this order. The court directs the Clerk to send a copy of this order to the trust fund officer at the Elgin Mental Health Center. Summons will not issue, however and the amended complaint [5] is dismissed without prejudice pursuant to 28 U.S.C. § 1915A for failure to state a federal claim on which relief may be granted. If Plaintiff wants to proceed with this lawsuit, he must, by February 13, 2019: (1) submit a second amended complaint that states a federal claim; and (2) submit a completed USM-285 (Marshals Service) form for each Defendant named in the second amended complaint. Failure to comply with these instructions will result in dismissal of this case. The Clerk is directed to send a copy of this order to Plaintiff, along with an amended civil rights complaint form and a blank USM-285 service form.

## STATEMENT

Plaintiff Paul D. Olsson, a detainee at the Elgin Mental Health Center, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff's application for leave to proceed *in forma pauperis* demonstrates he cannot prepay the filing fee and is thus granted. Pursuant to 28 U.S.C. § 1915(b)(1)-(2), the court orders: (1) Plaintiff to immediately pay (and the facility having custody of him to automatically remit) $12.20 to the Clerk for payment of the initial partial filing fee; and (2) Plaintiff to pay (and the facility having custody of him to automatically remit) to the Clerk twenty percent of the money he receives for each calendar month during which he receives $10.00 or more, until the $350 filing fee is paid in full. The court directs the Clerk to ensure that a copy of this order is mailed to each facility where Plaintiff is housed until the filing fee has been paid in full. All payments shall be sent to the Clerk, United States District Court, 219 South Dearborn Street, Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify Plaintiff's name and the case number assigned to this case.

The court is required to screen prisoners' complaints and dismiss the complaint, or any claims therein, if the Court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant. 28 U.S.C. § 1915A; *see Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Courts screen prisoners' complaints in the same manner they

review motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the plaintiff's allegations liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Courts also must "accept all well-pleaded facts as true and draw reasonable inference in the plaintiff's favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

Plaintiff alleges that he has been placed at the Elgin Mental Health Center (Elgin) for more than ten years, and has participated in a number of treatment programs. (Dkt. 5, pg. 3.) Socializing and building a peer support network are principles throughout the treatment programs at Elgin. (*Id*.)

On September 27, 2018, Maureen Jung-Oliver contacted Social Worker Kay expressing concern over rumors that Plaintiff and fellow-detainee R.S. were in violation of an Elgin policy that prohibited patients from giving or sharing property. (*Id*., pg. 4.) The rumors were not based on any incidents or documented events. (*Id*.) Despite the lack of any evidence of wrongdoing, Kay told R.S. to stop associating with Plaintiff and warned that R.S.'s liberty interest was in jeopardy due to associating with Plaintiff. (*Id*.) Plaintiff alleges Medical Director Richard Malis refused to sign R.S.'s conditional release petition due to her association with Plaintiff. (*Id*.).

On September 28, 2018, Plaintiff was informed that fellow-patient R.S. was prohibited from associating with Plaintiff by any means. (*Id*, pg. 3.) Plaintiff has known R.S. since 2013 and resided in the same housing unit with R.S. for over three years before R.S. was transferred to minimum security housing. (*Id*.) Plaintiff and R.S. had not violated any rules or policies to warrant the no-association mandate. (*Id*.) Plaintiff is Caucasian and R.S. is "of African descent." (*Id*., pg. 5.) Plaintiff believes these circumstances support claims of unconstitutional interference with his right to associate with R.S., denial of his right to medical treatment, a state law claim of negligence, and race discrimination.

Following a discharge hearing (*see* 725 ILCS 5/104–25(a) (West 2014)), Plaintiff was found "not not guilty" of several of the charged offenses. *See People v. Olsson*, 2016 IL App (2d) 150874 ¶ 3, 50 N.E.3d 731, 732 (2016). He is now held under a provision of Illinois law that "provides for the potentially long-term commitment of a criminal defendant who has been found unfit to stand trial and for whom treatment to attain fitness has been unsuccessful." *Id.*; *see* 725 ILCS 5/104-25(g)(2). A discharge hearing determines only whether an acquittal should be entered. *People v. Waid*, 221 Ill.2d 464, 470-71, 851 N.E.2d 1210, 1214 (Ill. 2006). Therefore. a detainee, who is not acquitted at a discharge hearing, has not "'gained a definitive resolution of the charges against him'"; rather. "'[t]he question of guilt is to be deferred until the defendant is fit to stand trial.'" *Id.* (internal citations omitted). As such, Plaintiff's claims are examined as Plaintiff being a pre-trial detainee.

A detainee retains only those rights that are consistent with his detention or incarceration. *See Shaw v. Murphy*, 532 U.S. 223, 229 (2001); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). "[F]reedom of association is among the rights least compatible"

2

with such detention or incarceration. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (citiations omitted). Some curtailment of that freedom must be expected in the institutional context. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461 (1989) (denial of prison access to a particular visitor is not an independent due process violation); *Peterson v. Grise*, No. 13-cv-1356, 2014 WL 2195217, *1 (N.D. Ind. May 23, 2014) (banning a specific visitor for a six month period did not violate rights of pre-trial detainee; any due process claim (if it exists) lies with the visitor only). Importantly in the instant case, Plaintiff alleges, in effect, that R.S. chose not to associate with him, and while that "choice" may have been "forced" or by manipulation, any claim based on conduct by others would that that of R.S., not Plaintiff. *Id.*

Plaintiff's alleged denied of the right to treatment claim also fails. A constitutional violation with respect to a pretrial detainee's medical needs is governed by the Fourteenth Amendment. *See Miranda v. County of Lake*, 900 F.3d 335, 352-54 (7th Cir. 2018). As applied to detainees who, like Plaintiff, are seeking mental health treatment, "detainees are entitled to non-punitive programs designed using the exercise of professional judgment." *Allison v. Snyder*, 332 F.3d 1076, 1080 (7th Cir 2003) (citing *Youngberg v. Romeo*, 457 U.S. 307 (1982)). A claim based on denial of treatment requires a showing of "substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323. The court in *Allison* summarized the *Youngberg* rule this way; "(a) committed persons are entitled to some treatment, and (b) what that treatment entails must be decided by mental-health professionals." *Allison*, 332 F.3d at 1081.

Here, Plaintiff alleges that socializing and peer support networks are important aspects of his treatment program. R.S.'s decision to cease communicating with Plaintiff based on alleged conduct by the Defendants did not result in the prevention of Plaintiff's ability to socialize or have peer support networks – it only resulted in the absence of a single individual from Plaintiff's socialization and peer support network. That deprivation did not prevent Plaintiff from participating in any treatment program and does not constitute a due process violation.

Lastly, as to Plaintiff's other federal claim of racial discrimination, Plaintiff alleges that the Defendants coerced R.S. to stop associating with him because he is Caucasian and R.S. is "of African descent." The Equal Protection Clause of the Fourteenth Amendment protects individuals from government discrimination, typically on account of race, national origin, or sex. *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). Discriminatory intent may be established by showing an unequal application of a prison policy or system, but conclusory allegations of racism are insufficient. *Minority Policy Officers Ass'n v. South Bend*, 801 F.2d 964, 967 (7th Cir.1986). Plaintiff's allegations that Defendants' conduct in discouraging R.S. from associating with him due to bias and prejudice are too conclusory to state a Fourteenth Amendment Equal Protection claim (and inconsistent with Plaintiff's allegation that he had a long-term prior association with R.S.). *See, e.g., Hicks v. City of Chicago*, No. 15 C 06852, 2017 WL 4339828, at *8 (N.D. Ill. Sept. 29, 2017) (collecting cases holding that a bald assertion of racial profiling fails to state a claim), *Bonner v. McCallum*, No. 01-C-487-C, 2001 WL 34373164, at *12 (W.D. Wis. Nov. 16, 2001) (bald assertions of racial discrimination by prison staff, completely lacking in factual support, fail to state a claim).

Accordingly, the court dismisses the amended complaint without prejudice, and Plaintiff is given leave to submit a second amended complaint by February 13, 2019, if he can do so consistent with this order. Plaintiff is warned that he is expected to address deficiencies addressed in this order, not add new claims that are outside the scope of the complaint. Furthermore, the court notes that Plaintiff recently submitted an amended complaint in an earlier-filed federal lawsuit, *Olsson v. Langley*, No. 17 C 3028 (N.D. Ill.), in which he added allegations

of retaliation in being deprived of contact with R.S.  Plaintiff is reminded that litigating two actions regarding the same underling facts is improper.  *See Curtis v. Citibank N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) ("[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.").  Thus, if he believes he can state additional claims regarding not being able to associate with R.S., he may want to seek further amendment in his earlier-filed case and have this case dismissed.

Any second amended complaint must comport with Federal Rule of Civil Procedure 11; Rule 11 provides that by signing a pleading, a party represents to the Court that his claims are warranted by existing law and that factual contentions have evidentiary support or likely will have evidentiary support after further investigation.  FED. R. CIV. P. 11(b).  Plaintiff is warned that an amended pleading supersedes all previous complaints and must stand complete on its own.  Therefore, all allegations against all Defendants must be set forth in the second amended complaint without reference to the original complaint or amended complaint.  Any exhibits Plaintiff wants the court to consider in its threshold review of the second amended complaint must be attached.  Plaintiff must write both the case number and the judge's name on the second amended complaint, sign it, and return it to the Prisoner Correspondent.  Plaintiff is advised to keep a copy for his files.  Plaintiff should, along with a second amended complaint, submit a completed USM-285 (Marshals Service) service form for each Defendant named by name in the second amended complaint.  The U.S. Marshals Service will not attempt service on any named Defendant without the completed form.  Plaintiff may make copies of the blank form if additional forms are needed.

Should Plaintiff fail to submit a second amended complaint and completed service forms by February 13, 2019, this case will be summarily dismissed.

ENTER:

Date:  January 4, 2019

_____
REBECCA R. PALLMEYER
United States District Judge